# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LIMA CHARLIE SIERRA, LLC,

*Plaintiff,*

vs.

Case No. 20-CV-1089-EFM-GEB

TEXTRON AVIATION INC.,

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Lima Charlie Sierra, LLC ("LCS") asserts claims of negligence and bailment against Defendant Textron Aviation, Inc. ("Textron").  LCS alleges that Textron damaged LCS's aircraft while the aircraft was at Textron's service center for routine inspection and repair.  Prior to the alleged incidents of damage, the parties executed a Service Order Terms and Conditions contract ("Terms and Conditions"), which contains a limited liability provision at issue in this case. Pending before the Court is LCS's Motion for a Determination of Enforceability of Contract Issue (Doc. 23).  LCS asks the Court to conclude that LCS's claims are not barred by the limited liability provision in the Terms and Conditions or the economic loss doctrine.  As discussed in more detail below, because LCS's motion is not one prescribed by the Federal Rules of Civil Procedure, the Court converts it to a motion for partial summary judgment under Rule 56 and grants the motion in LCS's favor.

# I.      Factual and Procedural Background[1]

On October 24, 2019, LCS and Textron executed a proposal agreement regarding maintenance, inspection, and repair of LCS's plane, a 2007 Hawker Beechcraft Premier I aircraft. On November 14, 2019, LCS brought the aircraft to Textron's service center in Wichita, Kansas, for maintenance as outlined in the proposal.  When delivering the aircraft, LCS's representative signed an induction notification that included Textron's Terms and Conditions.  The Terms and Conditions apply to all work performed upon the aircraft by Textron Aviation Service ("TAS").[2] The Terms and Conditions also contained the following clause:

> **TAS LIMITED WARRANTY**: Subject to the limitations stated below, TAS warrants parts and labor for six months. Customer's sole remedy and the entire extent of TAS's liability under this limited warranty shall be (i) re-perform the applicable labor if found defective by TAS in its sole discretion; and/or (ii) the repair and/or replacement of parts, at TAS's Center's option, in accordance with the terms of the Textron Aviation Parts and Distribution (TAPD) Spares Warranty. This limited warranty does not extend to manufacturer's and vendor's parts that are outside the TAPD Spares Warranty, including, without limitation, any defect existing in such parts. Such parts warranties, if any are supplied by the manufacturers and/or vendors of such parts. Customer waives all other warranties, express or implied, whether of merchantability, fitness for a particular purpose, or otherwise. The obligations of TAS in this limited warranty shall be the exclusive remedies for any breach of warranty. In addition, neither party shall be liable for any punitive or consequential damages that arise from this agreement, including any damages for diminished value, or loss of use or profits.

LCS alleges Textron negligently damaged the aircraft in three separate instances while the aircraft was at the service center.  For the first instance, LCS alleges Textron damaged the aircraft's equipment bay door when the aircraft temporarily caught fire during an operational check.  For the

---

[1] The facts are taken from Plaintiff's Memorandum in support of its motion and are undisputed.

[2] The parties agree that TAS is another name for Defendant Textron.

second and third instances, LCS alleges Textron damaged a wing flap and a cabin floor structure when Textron sanded in these areas.

After learning of the instances, LCS's representative informed Textron that the aircraft was so devalued that LCS was no longer willing to accept the aircraft back.  LCS subsequently filed suit asserting claims for negligence and bailment for Textron's alleged failure to safeguard LCS's aircraft while in its care, custody, and control.  LCS alleges that it suffered damages which include physical damage to the aircraft, diminished market value resulting from the damage history, and other incidental and consequential items of damage.  In its Answer, Textron asserted the defenses that LCS's claims are barred or limited by the limited warranty provision of the Terms and Conditions and that LCS's tort claims are barred by the economic loss doctrine.

 During the scheduling conference, LCS requested the opportunity to file an early motion to address the legal question of enforceability of the limited warranty provision of the Terms and Conditions.  Textron consented to the motion, and the Court granted LCS's request in its Phase I Scheduling Order (Doc. 19).  LCS thus filed the pending Motion for Determination of Enforceability of Contract Issue (Doc. 23).

## II.    Legal Standard

LCS's motion is a legal nullity in that it is not a motion authorized by the Federal Rules of Civil Procedure.  It is not a motion for judgment on the pleadings or a motion for summary judgment.  Instead, it is a motion for determination of a question of law.[3]  LCS asserts that the

---

[3] *See Cole-Layer-Trumble Co. v. Bd. of Cty. Comm'rs of Cherokee Cty.,* 1991 WL 74251, at *3 n.1 (D. Kan. 1991) ("The court notes that the Federal Rules of Civil Procedure do not provide for a 'motion for determination of questions of law.' "); *see also Lebsack v. Rios*, 2017 WL 5444568, at *1 n.1 (D. Colo. 2017) ("There is no procedural rule providing for a 'motion for determination of law' . . . .  Regardless of the label, both parties indicate that they are hampered in their ability to consider settlement or otherwise to proceed with this case until the legal issues they pose are resolved.").  Courts considering motions asking for a legal determination have compared the motions to motions for summary judgment.  *See Humes v. Acuity*, 2019 WL 4738003, at *2 (D. Nev. 2019) ("Neither party cites a Federal

motion is appropriate for the Court's determination because "the issues of contract enforceability presented are solely legal issues, based upon certain facts not in dispute." Textron does not oppose the motion, and furthermore, suggests the motion should be treated akin to a Rule 12 or Rule 56 motion, where the movant bears the burden of proof and persuasion, and "any inferences by the Court must be drawn in favor of [Textron] as the party opposing the motion."

The Court agrees that the issues before the Court involve questions of law that may be resolved based on the undisputed facts. The interpretation of an unambiguous contract is a question of law for the Court.[4] Additionally, the determination of whether the economic loss doctrine applies to a set of facts is a question of law.[5] Therefore, the Court will convert LCS's motion to a motion for partial summary judgment under Rule 56.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[6] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[7] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[8]

---

Rule of Civil Procedure in its brief . . . I might treat a 'motion for determination of law' accompanied by evidence as a motion for partial summary judgment under Rule 56 . . . .").

[4] *Doce Ltd. P'ship v. Sandridge Exp. and Prod., LLC*, 2017 WL 1836977, at *3 (citing *Duffin v. Patrick*, 212 Kan. 772, 512 P.2d 442, 447-48 (1973)).

[5] *David v. Hett*, 293 Kan. 679, 270 P.3d 1102, 1104 (2011).

[6] Fed. R. Civ. P. 56(a).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[8] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

-4-

### III.     Analysis

**A.     The Enforceability of the Limited Warranty Provision to LCS's Claims**

Textron asserts that Plaintiff's claims are barred or limited by the language of the Terms and Conditions.  Specifically, Textron asserts that under the limited liability provision, Textron granted LCS the exclusive remedy of a repair and replace warranty; LCS's sole remedy was provided by that warranty; and LCS cannot recover consequential damages, including "diminution in value" or "loss of use" damages.  LCS argues that the limited liability provision does not apply to its claims because Textron did not expressly disclaim liability for its negligent acts.

Under Kansas law,[9] an agreement seeking to exempt a party from liability for its own negligence is not favored and subject to strict construction.[10]  These agreements are not enforced unless the protection from liability is expressed in clear and unequivocal terms.[11]  Here, LCS argues that the limited liability provision in the Terms and Conditions does not address Textron's negligence, and therefore, does not bar LCS's negligent claims.

This Court addressed a similar contractual provision in *Presbyterian Manors, Inc. v. SimplexGrinnel, L.P.*[12]  In that case, the parties entered into a services agreement in which the defendant agreed to test the plaintiff's fire sprinkler system.[13]  During the test, the defendant filled

---

[9] A federal court sitting in diversity applies the forum state's choice of law rules.  *See Moore v. Subaru of Am.*, 891 F.2d 1445, 1448 (10th Cir.1989).  Kansas law applies the law of the state where the contract is made.  *Dragon v. Vanguard Indus., Inc.*, 277 Kan. 776, 89 P.3d 908, 914 (2004).  Here, LCS's representative signed the Terms and Conditions in Wichita, Kansas—the location where the airplane was dropped off for inspection.  Therefore, Kansas law governs the parties' arguments concerning the interpretation and application of the contract.

[10] *Elite Pros., Inc. v. Carrier Corp.*, 16 Kan. App. 2d 625, 827 P.2d 1195, 1203 (1992) (citation omitted).

[11] *Id.* (quoting *Cason v. Geis Irrigation Co.*, 211 Kan. 406, 507 P.2d 295, 299 (1973)).

[12] 2010 WL 11628522 (D. Kan. 2010).

[13] *Id.* at *1.

the plaintiff's sprinkler system with water and subsequently failed to drain the system.[14]   The services agreement limited the defendant's liability as follows: "Customer agrees that Company shall be exempt from liability for any loss, damage or injury arising directly or indirectly from occurrences or the consequences therefrom, which the equipment or services was designed to detect or avert."[15]   The agreement also contained a limitation of damages provision stating: "IN NO EVENT SHALL COMPANY BE LIABLE FOR ANY DAMAGES, LOSS, INJURY, OR ANY OTHER CLAIMS ARISING FROM ANY SERVICING . . . OF THE COVERED SYSTEMS(S) . . . COMPANY SHALL NOT BE LIABLE FOR INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND. . . ."[16]   The defendant argued that these provisions barred the plaintiff's negligence claim.[17]   But, the Court disagreed, stating:  "[T]he service agreement did not expressly disclaim liability for negligent workmanship by the defendant. While defendant disclaimed liability for damages that the service and system were designed to prevent or avert, i.e. fires, it did not clearly and unequivocally disclaim liability for its own negligence."[18]

Textron argues that *Presbyterian Manors* is distinguishable from this case because in another section of its opinion, the Court upheld the contractual provision limiting the plaintiff from recovering consequential damages for claims other than express warranties.[19]   In addressing the

---

[14] *Id.*

[15] *Id.* at *5.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* at *3-*4.

plaintiff's breach of express warranty claim, the Court concluded that the limitation of damages did not apply to that claim because the limitation was found in a different section of the agreement, not the provision containing the express warranty.[20]   Textron argues that because the limitation of damages provision in this case is found within the same provision as the exclusive remedy, the limitation of damages precludes LCS's claims.

The Court is not persuaded by Textron's argument.  In *Presbyterian Manors*, the Court specifically addressed the limitation of damages provision in regard to the plaintiff's negligence claim and found that it did not disclaim damages caused by negligent workmanship.[21]   Thus, *Presbyterian* is persuasive authority that a limitation of damages provision does not apply to negligence claims where the provision fails to address negligent acts of the defendant.

*Presbyterian Manors* is also supported by additional Kansas case law.   In *Elite Professionals v. Carrier Corp.*,[22] a trucking company sued the manufacturer of a truck refrigeration unit in negligence after the unit failed and caused damages for meat spoilage.[23]   The contract entered into by the parties contained express warranties for repair and replacement, and within the same provision, a disclaimer of consequential damages.[24]   The court found that because there was no direct disclaimer with regard to claims for negligence, the plaintiff could assert its negligence claim.[25]   The Court stated:  "Because like or comparable language is not within the

---

[20] *Id*. at *4.

[21] Id. at *5.

[22] 16 Kan. App. 2d 625, 827 P.2d 1195 (1992).

[23] 827 P.2d at 1197-98.

[24] *Id*. at 1198.

[25] *Id*. at 1203.

printed warranty and disclaimer, we conclude that the printed warranty and disclaimer does not, as a matter of law, operate to preclude recovery by Elite on its asserted claim of negligence."[26]

Additionally, in *Corral v. Rollins Protective Services Co.*,[27] the Kansas Supreme Court upheld a liquidated damages provision for a negligence claim because the contract language specifically disclaimed liability for negligence.[28]   The plaintiff in that case also brought a claim for breach of implied warranty but the court refused to apply the liquidated damages provision to it because the disclaimer did not mention breach of implied warranty.[29]

Here, the language of the limited liability provision fails to address Textron's negligence. There is no clear and unequivocal waiver of negligence as required by Kansas law for the provision to be enforceable against LCS.   The Court makes this conclusion even in light of the limitation of damages provision, which states that Textron will not be liable for consequential damages arising from this agreement.[30]   As noted above, the Court was presented with an almost identical limitation of damages provision in *Presbyterian Manors* and found that such provision did not bar the plaintiff's negligence claim because the provision did not clearly and unequivocally disclaim liability for the plaintiff's negligence.   Accordingly, the Court concludes that the limited liability

---

[26] *Id.*

[27] 240 Kan. 678, 732 P.2d 1260 (1987).

[28] 732 P.2d at 1265.

[29] *Id.* at 1269.

[30] Textron also argues that the language in the Terms and Conditions disclaiming liability for consequential damages would apply to any claim brought by LCS—including those of negligence.  But the case it cites in support of this argument, *Evolution, Inc. v. SunTrust Bank*, 342 F. Supp. 2d 943 (D. Kan. 2004), involves a breach of contract claim, not a negligence claim.  *Id.* at 959-61.  Thus, *Evolution* is inapplicable to this case.

provision of the Terms and Conditions does not bar Plaintiff's claims.  LCS's motion for partial summary judgment on this defense is granted.

## B.   Economic Loss Doctrine

Textron next asserts that LCS's claims are barred by the economic loss doctrine.[31]  The economic loss doctrine is "a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses."[32]  "In its original form, the economic loss doctrine prohibited a commercial buyer of defective goods from suing in negligence or strict liability when the only injury consisted of damages to the goods themselves."[33]  The rule was first recognized by the U.S. Supreme Court in *East River S.S. Corp. v. Transamerica Delavel, Inc*.[34]  The *East River* court provided three justifications for the doctrine. It stated that a claim may be better suited for contract and warranty law, rather than tort law, if: (1) the losses are easily insured against; (2) restricting the parties to contractual remedies allows the parties to allocate risk through the bargaining process; and (3) warranty damages are sufficient to cover the injury and the imposition of tort law would expand the scope of liability beyond the confines of the contract.[35]

---

[31] Both parties refer to Kansas law when discussing the economic loss doctrine in their respective briefs.  For negligence cases, Kansas applies the law of the state where the wrong occurs, *i.e.*, the place of injury.  *Dragon v. Vanguard Indus., Inc*., 89 P.3d at 914.  Here, LCS's alleged injury occurred in Kansas, where the aircraft was allegedly damaged.  Thus, the Court applies Kansas law to the bailment claim.

[32] *David*, 270 P.3d at 1105 (quoting *Indem. Ins. Co. v. Am. Aviation*, 891 So. 2d 532, 536 (Fla. 2004)).

[33] *Rinehart v. Morton Bldgs., Inc*., 297 Kan. 926, 305 P.3d 622, 627 (2013) (citation omitted).

[34] 476 U.S. 858 (1986).

[35] *Id*. at 871-74.

Since the Supreme Court's holding in *East River*, courts have extended the doctrine's application beyond the product liability arena to preserve the distinctions between contract and tort law.[36]  Kansas courts initially took an expansive approach to the doctrine but that approach "has slowed in recent years."[37]  For example, the Kansas Court of Appeals initially held that the economic loss doctrine should be applied to claims against contractors in residential construction defect cases.[38]  But, the Kansas Supreme Court eventually overruled this holding.

In *David v. Hett*,[39] the Kansas Supreme Court held that the economic loss doctrine did not bar a homeowner's claims to recover economic damages caused by negligently performed residential construction services.[40]  *David* observed the trend in other jurisdictions to limit the application of the doctrine to situations where the injury complained of could not be traced back to a tort duty arising independently of the contract.[41]  *David* also reasoned that applying the doctrine in the residential construction context would not further the *East River* policy justifications because (1) service contracts lack the warranty protections afforded goods under the Kansas Uniform Commercial Code ("U.C.C."); (2) residential construction contracts do not usually involve only sophisticated parties with equal bargaining power; and (3) using the consequences or damages, rather than the duty breached, as a litmus test for whether the doctrine

---

[36] *Freedom Transp., Inc. v. Navistar Int'l Corp.*, 2019 WL 4689604, at *23 (D. Kan. 2019).

[37] *Corvias Mil. Living, LLC v. Ventamatic, Ltd.*, 54 Kan. App. 2d 169, 397 P.3d 441, 446 (2017).

[38] *Prendiville v. Contemp. Homes, Inc.*, 32 Kan. App. 2d 435, 83 P.3d 1257, 1263 (2004), *overruled by David*, 270 P.3d at 1113.

[39] 293 Kan. 679, 270 P.3d 1102 (2011).

[40] 270 P.3d at 1115.

[41] *Id.* at 1108-09.

-10-

applies may lead to unfair results.[42]   As to the last justification, the court explained that one contractor may escape liability imposed on others simply because the contractor's negligence is discovered before it causes injury to a person or other property.[43]

Two years later, in *Rinehart v. Morton Buildings, Inc.*,[44] the Kansas Supreme Court held that the economic loss doctrine did not bar the plaintiffs' negligent misrepresentation claims in a residential construction defect case.[45]   The plaintiffs based their claim on the defendant's statements that it would complete a pre-engineered building for the plaintiffs' home and business in a timely manner, that the building would accommodate the plaintiffs' needs, and that the building would meet or exceed industry standards.[46]  The Kansas Supreme Court determined that the plaintiffs' negligent misrepresentation claims were not barred by the economic loss doctrine because the duty at issue arose separately from the contract by operation of law.[47]

The Kansas courts have not addressed whether the economic loss doctrine applies to negligence or bailment claims when two parties have contracted for aircraft repair services.  LCS argues that the Court should not apply the doctrine in this case because the Kansas courts have noted that the doctrine is not well-suited to service contracts and because the duties underlying LCS's tort claims arise under operation of law and not under the contract.  Textron, on the other hand, argues that the Court must look to the *East River* policy justifications in determining whether

---

[42] *Id*. at 1113-14.

[43] *Id*. at 1114.

[44] 297 Kan. 926, 305 P.3d 622 (2013).

[45] 305 P.3d at 632.

[46] *Id*. at 625.

[47] *Id*. at 632-33.

the doctrine applies.  Textron argues that LCS's claims are better suited for contract law because (1) LCS can easily insure the losses sought; (2) the risk was allocated between two sophisticated parties in the Terms and Conditions; and (3) the warranty provided a repair and replace remedy.

The Court is not fully convinced by Textron's argument that the *East River* policy considerations underlying the economic loss doctrine apply here.  As noted by the Kansas Supreme Court in *David*, the U.C.C. does not apply to contracts for services, and several other jurisdictions have found that the economic loss doctrine is not well-suited for such contracts because they are not subject to the U.C.C.[48]  Furthermore, the Terms and Conditions is a form contract that LCS signed when it provided the airplane to Textron for inspection—not a contract in which the parties negotiated its terms.  And, Textron's argument that the parties are sophisticated entities that bargained for their risks applies both ways.  Textron had the opportunity to limit its liability for negligence in the Terms and Conditions but did not.

Although the *East River* policy considerations do not necessarily support the application of the doctrine, the Court's analysis does not end there.  In both *David* and *Rinehart*, the Kansas Supreme Court also based its application of the doctrine on whether the plaintiffs' claims sounded in tort or contract.[49]  If the claim arose in tort, then the doctrine did not apply.[50]  In *David*, the Kansas Supreme Court provided the following explanation for when a claim arises in tort or contract:

> Whether a claim sounds in tort or contract is determined by the nature and substance of the facts alleged in the pleadings. A breach of contract claim is the failure to perform a duty arising from a contract, and a tort claim is the violation of duty

---

[48] *David*, 270 P.3d at 1113-14.

[49] *Id*. at 1114; *Rinehart*, 305 P.3d at 632-33.

[50] *See id*.

-12-

imposed by law, independent of the contract. But the fact that the parties have a contractual relationship does not necessarily control the inquiry because legal duties may arise even though the parties also have a contract, so that [w]here a contractual relationship exists between persons and at the same time a duty is imposed by or arises out of circumstances surrounding or attending the transaction, the breach of the duty is a tort.[51]

This Court also addressed the issue briefly in *Presbyterian Manors*.  While not expressly mentioning the economic loss doctrine, the Court discussed when a party could bring a claim in both contract and tort.[52]  The Court stated:  "Under Kansas law, not all tort claims are barred by the existence of a valid contract.  When conduct could satisfy the elements of both a breach of contract and an independent tort, [the] plaintiff may pursue both remedies unless the conduct is permitted by the express provisions of the contract."[53]  The plaintiff alleged that it suffered damages because of the defendant's negligent workmanship in failing to drain its pipes.[54]  The Court concluded that the plaintiff properly alleged the elements of the negligence claim and that the contract did not allow the defendant to fail to drain the pipes which eventually froze.[55]  Therefore, the plaintiff could pursue its negligence claim in addition to its breach of express warranty claim.[56]

Here, for its negligence claim, LCS alleges that Textron had a duty to use ordinary and reasonable care in servicing the aircraft and that Textron breached this duty by allowing the aircraft

---

[51] *David*, 270 P.3d at 1114 (internal quotation marks and citations omitted).

[52] *Presbyterian Manors*, 2010 WL 11628522, at *5.

[53] *Id*. (quoting *Regal Ware, Inc. v. Vita Craft Corp*., 653 F. Supp. 2d 1146, 1152 (D. Kan. 2006)).

[54] *Id*. at *4.

[55] *Id*. at *5.

[56] *Id*.

to be damaged by fire and by sanding the right aft fuselage and cabin floor beyond limits.  Like *Presbyterian Manors*, the duty LCS asserts in its Complaint arises from Textron's alleged negligent workmanship and not the Terms and Conditions.  Furthermore, the Terms and Conditions does not expressly address or allow incidents of damage to the aircraft while at Textron's facility for inspection and repairs.  Therefore, the Court concludes that Textron's alleged breach of duty arises in tort and the economic loss doctrine does not bar this claim.

The Court turns next to LCS's bailment claim.  In Kansas, a bailment involves the "delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it."[57]  A bailee—the person who receives possession or custody of the property in the bailment—has a duty to use "ordinary care and diligence in the safeguarding of the bailor's property, and he is answerable for loss or injury resulting form failure to exercise such care."

Here, LCS alleges that it bailed and entrusted its aircraft to Textron and that Textron had a duty to use ordinary care and diligence in safeguarding the aircraft and to return it to LCS in as good condition as when it arrived.  Although Kansas courts have not specifically addressed the issue, generally, the duty of safeguarding another's property is one that arises from operation of law.[58]  Kansas courts have held, however, that "where bailed property is damaged while in the

---

[57] *M. Bruenger & Co., Inc. v. Dodge City Truck Stop, Inc.*, 675 P.2d 864, 868 (Kan. 1984) (quoting 8 Am. Jur. 2d, Bailments, § 2).

[58] 8 C.J.S. Bailments § 55 (duty of bailee to protect the bailed property is "independent of the contract") (citations omitted).

possession of a bailee as the result of the bailee's negligence, the bailor has a choice of remedies."[59] The bailor "may elect to affirm the contract, waive the tort, and bring [its] action in contract; or [it] may abandon the contract and proceed against the bailee in an action in tort based upon the bailee's negligence."[60]  Because Kansas law gives a plaintiff the option of bringing suit in contract or tort, the Court concludes that when presented with the issue, Kansas courts would hold that the underlying duty for a bailment claim arises by operation of law.  Based on this conclusion, Textron's alleged duty to safeguard the aircraft and return it to LCS arises by operation of law. Therefore, the economic loss doctrine does not bar LCS's bailment claim.

Because the Court concludes that LCS's claims for negligence and bailment are not barred by the economic loss doctrine, the Court grants LCS's motion for partial summary judgment on these defenses.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion For Determination of Enforceability of a Contract Issue (Doc. 23), which the Court has converted to a motion for partial summary judgment, is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 17th day of June, 2021.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[59] *Nolan v. Auto Transporters*, 226 Kan. 176, 597, P.2d 614, 621 (1979) (citing *Cont'l Ins. Co. v. Windle*, 214 Kan. 468, 520 P.2d 1235, 1239 (1974)).

[60] *Id*.