**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

LIMA CHARLIE SIERRA, LLC,

      *Plaintiff,*

  vs.                                  Case No. 6:20-cv-01089-EFM-GEB

TEXTRON AVIATION INC.,

      *Defendant.*

**MEMORANDUM AND ORDER**

Before the Court is Defendant Textron Aviation Inc. ("Textron")'s Motion for Summary Judgment (Doc. 111). Textron moves for summary judgment on Plaintiff Lima Charlie Sierra, LLC ("Lima")'s claims for negligence and negligent bailment. Lima's claims arise out of damage caused to its aircraft by an electrical burn while it was at Textron's facility undergoing repairs. Because Plaintiff has failed to produce expert testimony failing to establish that the burn or alleged oversanding caused the aircraft at issue to diminish in value, the Court grants Textron's Motion.

## I.        Factual and Procedural Background[1]

Lima is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Sherwood, Arkansas.  Larry Crain, Sr., is Plaintiff's representative in this case.  Textron is a corporation organized and existing under the laws of the State of Kansas with its principal place of business in Wichita, Kansas.

Textron owns and operates a maintenance and repair service center in Wichita, Kansas for its Cessna, Beechcraft and Hawker aircraft models.  On or about November 14, 2019, Lima delivered a 2007 Hawker Beechcraft Premier I aircraft, model 390, manufacturer serial number RB-205 (the "Aircraft") to Textron's facility to repair two "squawks"—belly chafing and corrosion from a leak under the lavatory.

At some point while the Aircraft was in Textron's possession, Textron engineers accidentally burned a small hole in the hull of the aircraft.  Taking responsibility for the incident, Textron volunteered to repair the burn damage gratis.  To complete this repair, Textron had to devise and obtain FAA approval for a new type of repair, one not already covered by a maintenance manual.    Before Textron could repair the Aircraft, however, Crain, Sr. declared that the Aircraft was no longer airworthy, directed Textron to cease work on it, asked Textron to buy the Aircraft, and left the Aircraft in Textron's possession.  The Aircraft remained at Textron's facility for over a year.  In January 2020, Lima bought a new aircraft, incurring expenses from its use.

In January 2021, Lima sold the Aircraft to a company owned by Crain, Sr.'s son, Larry Crain, Jr., for $1 million.  Crain, Jr. then gave Textron permission to finish all repairs, including the burn damage, belly chafing, and the lavatory leak.  Crain, Sr. testified at his deposition that

---

[1] The facts are those unconverted by the parties except where otherwise noted.

prior to selling the aircraft he had received offers for the Aircraft ranging from $900,000 to $1 million.  However, Crain, Sr. never openly marketed the Aircraft.  After Textron completed all repairs, Crain, Jr. advertised the Aircraft on the open market, ultimately selling it for $1,686,714 in August 2021.

In this case, the only expert opinion on the Aircraft's value prior to the burn incident came from Lima's designated expert, Pat Duggins.  Relying on the standards of the Professional Aircraft Appraisers Organization—which require, among other factors, that the aircraft be "exposed to the open market for a reasonable period of time"—Duggins testified that the value of the Aircraft on or prior to November 21, 2019, was $1,874,884.  However, Lima failed to provide Duggins with any logbooks or maintenance records of the Aircraft from prior to the burn incident.

Lima initiated this suit against Textron on March 20, 2020.  Lima asserts claims against Textron for negligence and negligent bailment, relying on a diminution of value theory to prove damages.  Lima also seeks recovery of its alleged consequential damages resulting from the use of the other aircraft purchased in January 2020.   Lime alleges that Textron caused damage to the aircraft, thus reducing its value, by burning the Aircraft and oversanding its hull during the repairs for the belly chafing and lavatory leak.  To establish the Aircraft's value after delivery to Textron, Lima relies solely on Crain Sr.'s testimony regarding offers to buy the Aircraft and the eventual sale of the Aircraft to Crain, Jr.'s company for $1 million.  Plaintiff offers no expert testimony about the value of the Aircraft after the burn incident or whether the burn incident or alleged oversanding caused a diminution in value.  Likewise, Lima provides no expert testimony that Textron oversanded the Aircraft's hull—no evidence at all, in fact, except Crain, Sr.'s opinion.  Finally, Lima offers no expert testimony that the Aircraft was render unairworthy even after Textron's FAA-approved repair of the burn hole and other squawks.

Discovery closed on November 18, 2022.  Defendant submitted the present Motion soon after.

## II.      Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2]  A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[4]  The nonmovant must then bring forth specific facts showing a genuine issue for trial.[5]  These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[6]  The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[7]

## III.      Analysis

Plaintiff asserts claims for negligence and negligent bailment under Kansas law.  Lima must establish the same elements to prevail on each claim, namely: "(1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that legal duty; (3) the breach of that legal duty was the

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns*, *LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[5] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

proximate cause of the plaintiff's injury; and (4) the plaintiff sustained damages."[8]   Assuming

without deciding that the bailee/bailor relationship existed between the parties and that Textron

breached a legal duty owed to Lima for both claims, the relevant inquiry becomes whether Textron

caused the diminution in value that Lima seeks to recover.

**B.      Plaintiff cannot establish causation because it fails to provide expert testimony.**

Textron first argues that Lima cannot prevail on the causation elements of its claims

because it fails to present any expert testimony establishing the amount of damages caused by the

burn incident or the alleged oversanding.   Kansas law requires a plaintiff to produce expert

testimony to establish "causation [when] such matters are outside the knowledge of the average

person without specialized training."[9]   Frequently arising within the context of medical malpractice

suits,[10] the standard for when expert testimony is necessary to prove causation can apply in other

technically complex circumstances as well.[11]

---

[8] *Jewett v. Miller*, 46 Kan. App. 2d 346, 263 P.3d 188, 191 (2011); *see also M. Bruenger & Co. v. Dodge City Truck Stop, Inc.*, 234 Kan. 682, 675 P.2d 864, 868 (1984) ("The bailee in a bailment for mutual benefit must use ordinary care and diligence in the safeguarding of the bailor's property, and he is answerable for loss or injury resulting from failure to exercise such care, or . . . for any loss or injury due to his negligence, or ordinary negligence." ) (quoting 8 Am. Jur. 2d, Bailments § 221).

[9] *Bowens v. Greenwood Cnty. Hosp.*, 490 P.3d 84 (table), 2021 WL 3042249, at *7 (Kan. Ct. App. 2021), *review denied* (Dec. 9, 2021) (quoting *Perkins v. Susan B. Allen Mem'l Hosp*, 36 Kan. App. 2d 885, 146 P.3d 1102, 1105–06 (2006)); *see also Rodgers v. Beechcraft Corp.*, 759 F. App'x 646, 679 (10th Cir. 2018) (requiring expert testimony as to causation as a matter of law under both Kansas and Oklahoma law in context of "complicated aircraft electrical system").

[10] *See, e.g.*, *Perkins*, 146 P.3d at 1105–06.

[11] *See, e.g.*, *Singh v. Krueger*, 39 Kan. App. 2d 637, 183 P.3d 1, 4 (2008) (requiring expert testimony to prove causation in legal malpractice case); *see also Tudor v. Wheatland Nursing L.L.C.*, 42 Kan. App. 2d 624, 214 P.3d 1217, 1221–22 (2009) ("We have consistently rejected the notion that classification of a claim as ordinary negligence rather than medical malpractice determines whether expert testimony is required.   Instead, expert testimony is necessary only if the matter is outside the common knowledge of the jury.") (citations omitted).

Two cases are instructive for illuminating this standard.  First, the court in *Chapman v. Kansas Basement & Found. Repair, Inc.*,[12] held that expert testimony was necessary to establish "a causal nexus between any alleged breach of contract and the diminution of value" in a breach of contract case.[13]  There, a private contractor had performed faulty work on the plaintiff's home, allegedly causing damage to the foundation and fireplace.[14]  The plaintiff sued to recover damages based on a diminution in value theory.[15]  Noting that preexisting conditions prior to the breach might also have diminished the value of the plaintiff's home, the district court had granted summary judgment to the defendant because the plaintiff had failed to offer expert testimony showing that the defendant's actions diminished the value of her home.[16]

Affirming this decision, the Kansas Court of Appeals held "[w]hen a case involves preexisting conditions that may complicate the question of damages, an expert is required to distinguish and attribute those damages that may have been caused by the preexisting condition and those damages that may have been caused by defendant's breach of the standard of care."[17]  The court reasoned that the "preexisting structural defects inherently impacted the district court's ability to determine whether, and to what extent, it should award [the plaintiff] damages."[18]  Thus, the preexisting conditions "made it virtually impossible for [plaintiff] to establish the extent to which [defendant] diminished the value of her home without expert testimony."[19]

---

[12] 210 P.3d 137 (table), 2009 WL 1911750 (Kan. Ct. App. 2009).

[13] *Id.* at *4.

[14] *Id.* at *2–3.

[15] *Id.* at *3.

[16] *Id.*

[17] *Id.* at *4 (cleaned up) (further citations omitted).

[18] *Id.*

[19] *Id.*

Applying *Chapman*, this Court in *Prudential Insurance Co. of America v. Textron Aviation, Inc.*[20] examined a case where the defendant left the plaintiff's airplane on the runway during a hailstorm instead of parking it inside a hangar.[21]   The plaintiff then brought a claim for negligent bailment, relying on a diminution of value theory of damages.[22]

After determining that the lack of expert testimony establishing the standard of care was by itself dispositive, the court turned to a "second and independent reason" for granting summary judgment to Textron—the lack of expert testimony as to causation.[23]  Like the house in *Chapman*, the plaintiff's airplane also had preexisting conditions, namely "pre-hail damage 'squawks' that plaintiff never repaired and the 'history' that came with the aircraft from three other incidents where the aircraft sustained damage."[24]  Despite these preexisting conditions, the plaintiff had not retained any expert to opine as to the extent Textron's alleged negligence caused the airplane to diminish in value.[25]  Therefore, the plaintiff could not "distinguish and attribute those damages that may have been caused by the preexisting condition and those damages that may have been caused by defendant's breach of the standard of care."[26]  The Court concluded that "[w]ithout expert testimony to establish the requisite causal link, no reasonable jury can conclude that defendant was negligent as a matter of law."[27]

---

[20] 2018 WL 1992423 (D. Kan. 2018).

[21] *Id.* at *1.

[22] *See id.* at *16.

[23] *Id.* at *15.

[24] *Id.* at *16.

[25] *Id.*

[26] *Id.* (quoting *Chapman*, 2009 WL 1911750, at *4) (further citation, quotations, and ellipses omitted).

[27] *Id.*

The Court, however, acknowledged that for the plaintiff's negligent bailment claim, a presumption that Textron caused the damage applied.[28]  Specifically, Kansas law states that "[w]hen the bailor shows that the property was delivered to the bailee for hire and that the bailee has failed to return it, the bailor has made out a prima facie case of negligence against the bailee, and the burden of going forward with the evidence to explain the failure to redeliver then shifts to the bailee."[29]  However, the Court found that Textron, by pointing to the evidence of preexisting conditions, "offer[ed] uncontroverted facts establishing several other reasons—besides the hail damage—why the aircraft's value diminished."[30]  In doing so, Textron shifted the burden of production back to the plaintiff to show that the hail damage caused the diminution in value claimed by the plaintiff.[31]  And, of course, expert testimony was necessary to show causation.[32]  Without such expert testimony, the Court granted summary judgment to Textron.[33]

The present case is nearly identical to *Prudential Insurance*.  Besides the burn damage and repair, the Aircraft had preexisting conditions—i.e., the belly chafing and lavatory leak—that may have also caused a diminution in value.  Although Lima retained Duggins to opine on the value of the Aircraft before the burn incident, Duggins clarified in his deposition that he did not consider any maintenance records or logs from before the incident at all, despite requesting them from Lima.  Therefore, the impact on the value of the Aircraft from these "squawks" is unaccounted for in Duggins' valuation.  Because those preexisting conditions could negatively impact the Aircraft's

[28] *See id.*

[29] *M. Bruenger & Co.*, 675 P.2d at 687.

[30] *Prudential*, 2018 WL 1992423, at *17.

[31] *Id.*

[32] *Id.*

[33] *See id.* at *18.

value, expert testimony is necessary to prove that the burn incident caused the diminution in value as alleged or at all.  This conclusion falls in line with both *Chapman* and *Prudential Insurance*, echoing the basic requirement in Kansas law that expert testimony is necessary for matters outside the common knowledge of the jury.  And it cannot be seriously doubted that distinguishing between the effect of burn damage and other preexisting conditions on complex machinery like an aircraft is outside a jury's common knowledge.

Lima admits that it has no expert testimony as to causation.  Duggins provided only an opinion on the Aircraft's value prior to the burn incident, and one based on incomplete information at that.  Lima admits that Crain, Sr. is not qualified as an expert in aircraft valuation.

Instead of presenting expert testimony on the subject, Lima argues that Textron's liability has already been established because it is undisputed that Textron caused *some* damage to the Aircraft.  Really though, Lima has at best only established that Textron breached its duty of care when it burned the Aircraft.  In making this argument, Lima misapprehends the holdings of *Chapman* and *Prudential Insurance*.  The point is not whether Textron caused *any* damage to the Aircraft—it did—but whether it caused the diminution in value alleged by Lima.  Without expert testimony on that exact issue, a jury could not reasonably find in Lima's favor at trial.

Lime also argues that the presumption of causation that arises in bailment cases enables it to avoid offering expert testimony to prove causation on its negligent bailment claim.  This argument misunderstands or ignores the reasoning in *Prudential Insurance*.  Here, Textron cites to uncontroverted evidence that the Aircraft was delivered with preexisting defects, thus rebutting the presumption that any diminution in value was caused by the burn incident.  Therefore, the burden of production shifts back to Lima to establish causation, which it can only do through expert testimony in this case.  Because it has not designated any expert to testify on causation,

Lima cannot prevail on either of its claims.  Therefore, the Court grants summary judgment to Textron on each of Lima's claims.

## B.     Other damages claimed by Lima.

In addition to its diminution in value damages, Lima also seeks damages related to expense incurred by purchasing, insuring, and utilizing a new airplane while it left the Aircraft at Textron's facility.  Without addressing the virtues—or lack thereof, rather—of these damages, the Court concludes that this claim fails as well.  Not only is it subsumed within the above analysis, but furthermore, Lima has not offered any evidence that the Textron's actions caused the Aircraft to no longer be airworthy beyond Crain, Sr.'s opinion.  Once again, Crain, Sr. is not an expert in aircraft airworthiness, and whether a small burn hole repaired to FAA-approved specifications renders an airplane unairworthy is not within a layperson's common knowledge.  Therefore, for this "independent and second reason,"[34] the Court grants Textron summary judgment on Lima's claim for these alleged consequential damages.

**IT IS THEREFORE ORDERED** that Defendant Textron Aviation Inc.'s Motion for Summary Judgment (Doc. 111) is **GRANTED.**

**IT IS SO ORDERED.**

This order does not close the case.

Dated this 12th day of June, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[34] *See Prudential*, 2018 WL 1992423, at *15 (granting summary judgment on two separate independent reasons: because of no expert testimony establishing appropriate standard of care and because of lack of expert testimony as to causation).